**MIDDLE ATLANTIC CONFERENCE, Petitioner,**

v.

**UNITED STATES of America and the Interstate Commerce Commission, Respondents.**

No. 84–2195.

United States Court of Appeals, Fourth Circuit.

Argued July 15, 1985.

Decided Aug. 5, 1985.

---

Bryce Rea, Jr., Washington, D.C. (Brian L. Troiano, Rea, Cross & Auchincloss, Washington, D.C., J. Alan Royal, Riverdale, Md., on brief), for petitioner.

Richard J. Osterman, Jr., Washington, D.C. (J. Paul McGrath, Asst. Atty. Gen., Robert B. Nicholson, Robert J. Wiggers, Robert S. Burk, Acting Gen. Counsel, Lawrence H. Richmond, Deputy Associate Gen. Counsel, Washington, D.C., on brief), for respondents.

Before WINTER, Chief Judge, and WIDENER and HALL, Circuit Judges.

PER CURIAM:

The Interstate Commerce Commission suspended and subsequently cancelled portions of the New York, NY Short Haul Area Tariff ICC MAC 308–E (the "tariff") of Middle Atlantic Conference (MAC), which now appeals.

The tariff proposed:

1.  to make a slight increase in the level of class rates as to equalize those rates with the level of class rates applicable generally throughout the rest of MAC territory;

2.  to change the rate basis numbers used to determine the class rates between origin and destination groups to reflect the same system as used generally throughout the rest of MAC territory; and

3.  to change the zones assigned the metropolitan New York, NY, area so that the different street addresses would be in the same zone numbers as in the United States Postal Zip Code publications.

The tariff included regular and released rates. The ICC found that adjustments 1 and 2 would increase revenues and that adjustment 3 would in some instances increase revenues and in other instances decrease them.

The suspension and ultimate cancellation of the tariff was grounded upon 49 U.S.C. § 10706(b)(3)(C), which proscribes "discussion of or voting on" released rates on and after January 1, 1984. This enactment was one of several to limit the permissible scope of collective rate-making activities by rate bureaus so as to restore a measure of competition in the trucking industry.

In construing § 10706, the ICC rejected MAC's contention that since it merely altered rules related to transportation or service, it did not change a rate in violation of the statute. We think it correctly concluded:

> Whether a shipper pays a different rate because of a rule change or because of a direct change in the rate, the fact remains that the shipper or receiver pays a different rate. Section 10706(b)(3)(C) proscribes "discussion of or voting on rates"; it draws no distinction among the different ways in which rates can be changed and Congress did not intend that any such distinction be made. Congress' only intent was to remove the collective setting of released rates from the scope of permissible collective rate-making. The changes resulting from MAC's proposal affect the level of released rates ultimately paid by shippers and receivers, and constitute collective ratemaking in violation of section 10706(b)(3)(C).

Before us, there is no claim that the "rule changes" will not result in charges to shippers and receivers different from those made before the changes were made. Thus, we, too, think that the tariff, to the extent that it includes released rates, constituted a rate change that could not law-

fully be made after January 1, 1984 by a vote of the members of MAC.*

AFFIRMED.

---

* Of course, the vote of the members of MAC was on the tariff as an entirety, including regular and released rates, but we agree with the ICC that by a vote on the whole, the members impermissibly voted on the released rates included therein.